Yes, thank you, Your Honor, and may it please the court. My name is Jeffrey Fawcett and I'm here today representing Appellant and Plaintiff LTTB LLC. I'd like to reserve four minutes of my time for rebuttal. All right. Your Honors, please consider these phrases. Let's get ready to rumble. Three people. King of beers. Life is good. Just do it. Paw in order. Hasta la vista, baby. The honey badger catchphrases. And of course, let us turn up the beat. These puns and other phrases are all protected by trademark law. The owners of these marks would be very surprised, as was LTTB, to learn that they cannot prevent their marks from being copied onto the face of apparel and other products. The record here reflects that LTTB has four federal trademark registrations, two of which are incontestable. But the trademark let us turn up the beat. These registrations bring with them presumptions of validity, distinctiveness, and non-functionality. In addition to these presumptions, LTTB submitted undisputed evidence of its long-standing use of the mark on its online storefront continuously since 2011. LTTB had over 35,000 sales of products under its mark on this website, more than $950,000 in revenue, and several thousand positive reviews from consumers who associated the mark with the goods and services offered at the LTTB online storefront. As I read the district court's summary judgment analysis, the district court's ruling in large part turned on its finding that there was really an insufficient showing of source confusion. Can you address the record in terms of source confusion? Yes, your honor. Well, the district court did announce that the uses in question could not create source confusion, but the district court did not engage in this court's long-standing likelihood of confusion analysis under the sleek craft factors. We presented argument on that in our briefing and evidence on that. As I just said, we had significant evidence of secondary meeting, sort of circumstantial evidence that this court has held it is admissible to show secondary meaning, sales, long-time use. What was the evidence of secondary meaning? It seems to me the district court did review. He said there was plenty of evidence that you had lots of sales and there was evidence that people viewed your products favorably. They gave them favorable online reviews, but what was the evidence that they associated the product with its source? Well, your honor, among other things, Ms. Gorski, LTTB's founder and the prior owner of the brand, has testified in her deposition to being contacted multiple times by repeat customers who associated her and her online storefront with the brand, came back over and over again for products sold under the let us turn up the beat brand. And I do want to emphasize that this court has said that the sort of evidence LTTB submitted, sales, long-time use, revenues, positive reviews, those sorts of pieces of evidence are relevant to show secondary meaning. And in a case for summary judgment, the court has to look at this evidence in a light most favorable to LTTB. The district court basically ignored this evidence in its ruling. Oh, I was just going to focus on the deposition of the owner who indicated that she wasn't aware of instances of confusion. Is that an accurate reading of the record or am I missing some other portions of the record demonstrating confusion that I need to focus on? Your honor, what Ms. She was not aware of a specific instance where a customer or someone contacted her about one of the uses on the red bubble website. It's outside the record, but actually within the past couple of weeks, she has received such a message. But at the time of the summary judgment filing, there was not a specific message from a customer. The lack of actual confusion evidence is certainly not dispositive and case after case have said that we don't actually expect actual confusion evidence. Sometimes we have it. We didn't have it here, but we certainly had lots of evidence of the similarity of the marks, the proximity of the goods in commerce. These are goods that are not sold for a significant cost and consumer, the likelihood of confusion under that sleep factor favors a finding of confusion. And they're identical marks. The district court focused on the word mark, the pun, and didn't examine at all the design marks, which are relevant here. Several of the infringing and counterfeit uses that we identified directly copied the distinctive tilted design mark of LTTB with a similar typeface and a similar tilt to the image. This was not because people were trying to, they liked the pun or thought it was cute. It's because they were trying to copy the mark. And that's certainly been seen as relevant to the issue of likelihood of confusion, the intent of the junior user. Can I ask you a question about the history and the patent and trademark office? Yes. And I think you know what it is. So I want to not use a bunch of your time reciting it, but what are we to make of the history when the first application is turned down and the second one is granted? Well, your honor, to clarify that the application wasn't turned down. It was in the course of the providing a specimen of the use of the mark. An initial specimen was rejected and a substitute specimen was submitted. As we noted in our reply brief, LTTB or its predecessor at the time, Ms. Gorski, could have undertaken different ways of responding to the office action. The easiest way at the time was to simply submit a substitute specimen. But that should have no relevance to the question of whether or not Redbubble's uses are now infringing or copyright or a counterfeit. Because there are two separate inquiries here and the district court conflated them. The first inquiry. It may not have any relevance to whether or not they've in effect copied the trademark. But when the first trademark application was not approved, however you call it, the Patent and Trademark Office said this is not a protectable mark because it's merely an ornamental thing on a shirt. And when the second one was approved, it was because it was at least in conjunction with specimens that had hangers and tags, which to me are much relevant about source. So I'm trying to figure out whether or not the protected mark is a shirt on a hanger or with a tag or whether the protected mark is just simply on a shirt by itself. Your Honor, we need to focus on the two different things. The mark, the registered mark that LTTB has is let us turn up the beat, both the word mark and the design marks. And it's in connection with the goods and services listed in those registrations, which include t-shirts, tote bags, a whole list of products. Right, let me ask you a question. I understand that. I understand that. So can the mark as being limited to those products when accompanied by a tag or a hanger? It is not, Your Honor. It's not limited that way because and where the district court went astray, and this was described very, very well in the supporting brief from ENTA, the amicus brief. The inquiry here is, are the uses by Redbubble infringing of the mark that we have? We have, it's indisputable that, let us turn up the beat, the mark is owned by LTTB. That's a registered mark. We have that trademark. Now, the uses by Redbubble, they argue, are ornamental. That doesn't excuse them. There can still be a likelihood of confusion, regardless of whether those uses are ornamental or not. They don't need to be source identifying. It's a completely different inquiry, and that's why the statute that governs registration is a different statute from the one that governs likelihood of confusion and infringement. Mr. Fossett, at the beginning of your argument, you went through a list of funds and other word phrases that, you know, have been granted trademark protection. There's a list, equally long, probably longer, of similar types of phrases that haven't been granted protection. Now, there must be a principle that distinguishes the two. Can you tell me what that principle is? Your Honor, there are any number of ways to distinguish. I don't think there's a single principle that I could identify for you. A pun or phrase that is used consistently or distinctively with the sale of goods or services can become a trademark. There are some that may not be used, that could be descriptive of the goods and services that are being offered. That would be one reason why they might not be granted protection. Let Us Turn Up the Beat is not descriptive of anything. It doesn't have anything to do with apparel or tote bags or stickers or the other goods that are offered at the LTTB online website. So, the fact that there may be other phrases or puns that might not qualify for protection isn't necessarily relevant to what is at issue here. We focus, again, on we have registered trademarks. Presumptions come with those. The district court may, for its own reason, have not believed that... But a registered trademark can be used by somebody other than the owner in commerce as long as it's not used to identify source. Isn't that true? Not necessarily, Your Honor. The infringement does not require that the defendant use the mark in a source-identifying way. As this court found in the network automation case where a trademark was being used as a search term, a search engine term, that wasn't a use where it was being identified of source. The consumers never even saw that. It was behind the scenes in the search engine. That was still a use in commerce that gave rise to a potential infringement claim. So, the fact that Redbubble is using the marks in what it says is an ornamental fashion does not mean that those ornamental uses cannot be infringing. Because the logical extension of that... Excuse me. Yes, Your Honor. There are some uses that are not infringing, right? There can be uses of a trademark that are not infringing. Certainly, Your Honor. There are fair uses. For example, if I'm a beet manufacturer, if I'm a beet producer, sell beets in the supermarket, and I call my beets, let us turn up the beet, you don't have a trademark claim against them because it might present confusion, do you? Because they're not producing anywhere near the same goods you are. Your Honor, I think the hypothetical you pose certainly could be where we would have no claim. It would depend... Okay, so I get back to Judge Wynn's question then. The key to you having a claim is not that you have a valid, presumptively functional trademark, but whether or not, as the district court said here, there's sufficient evidence that might give rise to a reasonable juror being able to find that there was confusion, a possibility of confusion, a likelihood of confusion. So, again, your position, and I understand it, is that your sales and your favorable reviews were sufficient to give rise to a triable question of fact on that issue. Is that a fair statement? Yes, Your Honor. Certainly, we believe there's at least a triable issue of fact about that. Okay, what else besides your sales and the favorable reviews give rise to a triable issue of fact on that question? Well, the fact that they're registered marks and that come with them, the presumption of validity, distinctiveness, and non-functionality. If we're talking about whether or not... I mean, the elements of trademark infringement are, do we have a valid trademark, is there a likelihood of confusion? We have a valid trademark. The likelihood of confusion analysis was not conducted by the court. We've submitted evidence on the Sleecraft Act. No, no, it was. You think it was improperly conducted, and I take your point. What I'm trying to figure out is what evidence there was on that. The fact that you had a trademark doesn't automatically lead me to conclude there was a likelihood of confusion. So, you've said your sales, you've said the favorable reviews. Aside from that, the fact that you had a trademark, what other evidence was there about confusion? Well, Your Honor, I want to make sure we're talking about the same thing. The likelihood of confusion analysis under the Sleecraft factors, we submitted... Marks are similar. So, we submitted evidence of how Redbubble used the mark. They're using a similar mark. Proximity of the goods in the marketplace. These goods are all being sold on the internet at the same time. So, for example, when a consumer searches for lettuce turnip to beat in a search engine, they see advertisements from Redbubble next to advertisements for our online storefront side by side. So, that's proximity of the goods. How much these goods cost, that's another factor under the Sleecraft factors. These are all elements that we submitted evidence on. Okay, good. That's what I was trying to get you to tell me what other evidence you had, and then you kept going back to the presumption, and this is helpful in your answer. Thank you. Yes, Your Honor. And really, what was frustrating to us, and we were not... The district court did not engage in this analysis. Instead, the court said, because it found that this was an ornamental use or aesthetically functional use, we were precluded from showing a likelihood of confusion. We were precluded from showing source identifying the nature of these uses. And that's just not the law. And the court should have conducted the Sleecraft analysis. My time is up if I'm going to... Yes, our questioning did take you just right up to your time limit, but I'll put a few minutes back on the clock for rebuttal. Counsel, I don't know how the sound was coming across for the other judges, but I'm hearing a slight echoing sound during Mr. Fawcett's argument. So, if you wouldn't mind, Mr. Fawcett, I'm hitting the mute button, and maybe that will improve how the sound comes across during opposing counsel's arguments. Let's hear from Mr. Wilson. Good afternoon, Your Honor. May it please the court, Ken Wilson of CoSide Legal, appearing for the Apelli Red Bubble. Can you all hear me okay? Yes. More than 50 years ago, this court pronounced in Smith v. Chanel that, quote, the only legally relevant function of a trademark is to impart information as to the source or have generally confined legal protection to the trademark's source identification function for reasons grounded in the public policy favoring a free competitive economy. That's exactly what the district court did here, properly holding that because there was no evidence that consumers associate or identify the pun, let us turn up the beat, or products prominently displaying that pun with appellant. Appellant could not use trademark law, in the case of the district court's conclusion that appellant had offered no evidence of source identification was correct. Appellant offered no surveys, no customer testimony, no evidence of advertising expenditures, no evidence of actual confusion. In fact, she admitted she was unaware of any evidence of actual confusion. What would be, Mr. Wilson, what would be a use that would tend to be source identifying? Give me an example. Sure, if a hypothetical defendant were selling products that had let us turn up the beat on the collar tag, you know, the tag on the collar when you buy it, that's the type of use that is typically considered a branding use, a trademark type use. I mean, similar to a hang tag, right? Exactly. A hang tag is another great example. But what you're saying is if it's a use, say, you know, in the front of a teacher, that's not source identifying. I'm saying that that's not. It cannot be source identifying? No, it can be, but it typically is not. As the trademark office noted, both in its publications and in rejecting Appellant's original application, consumers don't typically consider a phrase or content emblazoned across the middle of a shirt to be source identifying. They consider it to be expressive or ornamental. There must be an exception to that, at least for a strong trademark. That's absolutely right, Your Honor, and it goes to the fundamental purpose of a trademark, which is source identification. If there is significant meaning of source identification, then, for example, Nike. Nike has strong source identification. If there is a shirt that has Nike across the middle of it, that could be an infringing use. But in this instance, there simply is no evidence of source identification. The only evidence in the record that relates to source identification is the declaration of the Appellant who submits statements without backup documentation relating to the purported sales. But even that declaration of source identification is inadequate. Number one, as a matter of law, this court is— Mr. Wilson, let me ask you to address your colleague's remarks because that's the thing I've been focusing on. He says, well, we had other evidence beside that. We had evidence about proximity in the marketplace, costs, etc. Is that evidence that could create a triable question of fact on confusion? No, not in this instance, Your Honor, because in this instance, there's simply no evidence that there was ever any identification between consumers. I'm asking the question a little differently. Are you saying that you must have a consumer survey in order to establish confusion possibility? Absolutely not, Your Honor, but there has to be something more. He says one of the things that the court has said is probative of this is similarity in costs, proximity in the marketplace, and he mentioned a third one. I can't read my handwriting. Did they introduce evidence of similarity in costs and proximity in the marketplace? They introduced evidence of where the products are being sold, so I suppose that would be considered proximity in the marketplace. I guess I'm asking the question, is that evidence from which a reasonable trier of fact could conclude that there was the requisite possibility of confusion? No, Your Honor, and the reason is because you never get there. The reason you never get there is because in this case, there are separate doctrines that protect the use of ornamental or expressive content across a garment or other item. You don't get to the likelihood of confusion analysis at all if there is no source identifying characteristic to the product. I think the first time you asked, Mr. Fawcett, whether there was any evidence of secondary meaning, and he referred to, well, there were sales and there were favorable reviews. Well, the problem with that is the only evidence of that is the declaration of the appellant itself, and as this court has held on multiple occasions, a trademark owner's own self-interest and testimony is insufficient to withstand summary judgment. That's in the Filipino Yellow Pages case and in the Fleischer Studios case. They also introduced a document that he refers to which purports to be a storefront from Etsy, and that's where they base their statement that there have been 35,000 sales and X amount of dollars. The problem with that document, aside from the fact that it lacks foundation, is the document says that those sales occurred from 2007 to the present in the storefront, but as the appellant admits, they never even started using the mark in question until 2011. So even the only document that they submit that isn't the unsupported declaration testimony of the appellant herself doesn't say what they claim it says. There simply isn't anything in this case, and the district court found this, that would support a finding that there was anyone that consumers associated the lettuce, the turnip, the beet praise with the argument. I think that because this is a presumed valid trademark and has a presumption of non-functionality, that itself is something that helps establish his case. Your honor, there is no question that they have a registration, and the registration does come with certain presumptions, but it does not come with the presumption that the mark is strong or that there is source identification with the mark. So let's take, for example, what the trademark office did with appellant's application. They found at the beginning, when appellant applied for a trademark, that the specimen they submitted was not the type that consumers would consider to be source identifying. It could be the case, as time evolves, that the never presented any evidence on that issue, and therefore, and I'll cite to Entrepreneur Media versus Smith, 279 Fed Third 1135. Incontestability provides a presumption of validity, but the court must independently assess the strength of the mark when considering defenses like aesthetic functionality, which is the defense that the court ruled on, or first amendment, which is the alternative argument that we presented that fits within the same facts as the aesthetic functionality defense. The language is quite similar, and the showing that's required is quite similar as well. Just to go back to second, because I think this is really important, the discussion about what consumers perceive in connection with the let us turn up the beat mark. The appellant herself testified that she wasn't aware of anyone who associated, I've got to find the quote again here, but that she didn't find, she could not quote, identify any evidence that consumers or purchasers associate the let us turn up the beat brand with either the appellant or the appellant's principal, Ms. Gorski. The listings themselves show the identities, the listings on the RedBubble marketplace show the identities of the sellers. The tags and titles that sellers put on to the listings to try to identify, if there was an association between appellant and these products, you would expect in the titles and tags that sellers put into the products to advertise them that they would say LTTB or Gorski but they don't. They say things like fun or music. This is why people buy shirts or other products bearing let us turn up the beat across the middle. It's not because there's any association between them and the appellant, which is the purpose behind trademark law. It's because they like the message. It's because they associate with the items being expressed. As a result of that, it would be improper to permit or a monopoly on the use of this pun across items like shirts. The mark is used in those products performs a significant non-trademark function that is essential to the purpose of the article. There is no trademark function that it performs because there's no association in the consuming public between the mark and the appellant and the expression of the mark is the reason that people buy the product. It's not because it's appellant's product. They don't even know who appellant is and at the very least there's no evidence that they know who appellant is and that's the reason why the court granted summary judgment. Whose burden was it to produce evidence on that court? That's a great question your honor. Thank you. This source identity, the aesthetic functionality is a straightforward defense, a challenge to the validity of the patent in which case or the challenge to the validity of the trademark in which case it would be the defendant's burden. But in this instance, it's really a defense to infringement. It's a different way of looking at the infringement issue. Remember, sleek craft is not the exclusive way to assess whether there's a likelihood of infringement. And in the Job's Daughter's case, that's precisely what the court held, that it was the plaintiff's burden to show that there was identity, source identity. And that case is cited throughout the papers. I'm sorry, I have no idea. For some reason the clock isn't up on my screen. So we're down to less than three minutes. Okay, perfect. The other thing, and I suppose I already mentioned this, is that there is no evidence of any actual confusion here and the plaintiff admitted this. There's no surveys or other evidence of secondary meaning source identification or likelihood of confusion, nor is there evidence of advertising expenses, which you would typically see in support of a showing of secondary meaning. Unless the court has any other questions, I'm actually, I think we've laid forth our position. It is also set forth quite well in the University Professor's Amici. The bottom line is the court correctly found here that there is no evidence in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on appellant's reputation, whether genuine LTTB products or those produced by any competitors. Rather, as their evidence and argument makes clear, consumers are interested in purchasing products displaying the pun. That is not a violation of the parks as a matter of law. Accordingly, the district court correctly concluded that summary judgment was appropriate on appellant's complaint and Redbubble respectfully submits that this court should affirm that judgment. Thank you very much, counsel. Let's put two minutes on the clock for rebuttal. Thank you, your honors. I'll try to very briefly address two points. One, to the question that Judge Tashima asked, that goes to the heart of why INTA opposed the district court's order and why it is so wrong and upends trademark law. You can't simply take someone else's trademark and put it on a front of a t-shirt and say that's ornamental and not source identifying, so we're okay. That's not the way it works. Counsel did say, well, you couldn't do that with Nike because Nike's famous. Well, among the consumers, the 10,000 consumers who love our online storefront, our mark is famous. And so when they see it on Redbubble, they're confused. You can't say just because we're not as famous as Nike, we don't have trademark rights in that context. And that's why the district court's opinion with respect to aesthetic functionality would have the effect of upending trademark law and the expectations of trademark owners. Now, with respect to Judge Hurwitz's questions about evidence. When you say your consumers are confused, there is no survey on confusion, at this record. Your honor, my client is a small business, a solo proprietor, and cannot afford the tens of thousands of dollars it would cost to do a survey. So no, we do not have a survey. But the surveys are not a necessary requirement for a trademark plaintiff. And with respect to the questions that Judge Hurwitz was asking about evidence, the validity of our trademark, which is a presumption that comes to the registration, means that it is source identifying as a matter of law unless they rebut that presumption. It did not rebut that presumption. We put in evidence of longstanding use. We put in evidence of celebrity sightings, popular media reporting on the wearing of our attire. And that evidence with respect to our website was at the record at 155 to 164. Mr. Wilson discusses a foundation. There was no objection to any of that evidence. That's way we have the evidence in the record that shows longstanding use and popularity of our mark. Thank you. All right. Thank you very much, counsel, both sides for your argument. The matter is submitted for decision by the court. Thank you, your honor. Thank you, your honor.
judges: Tashima, Nguyen, Hurwitz